IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Cutler Group, Inc.                  :
                                        : No. 1223 C.D. 2016
                v.                      : Argued: February 6, 2017
                                        :
Board of Supervisors                    :
of Worcester Township                   :


Appeal of: Dana Comly, Craig            :
Furlong, Sheryl Jorna, Adrienne         :
Keenan, Karl Kocher, Barb Kocher,       :
Ruth Kratz, Stuart Land,                :
Bobi Land, Pete Loughran,               :
Ed Lynett, Maura Lynett,                :
Bob Marshall, Donna Marshall,           :
Jim Phelan, Debbie Phelan,              :
Danielle Shadduck, Jim Wiley,           :
Paula Wiley, Paul Dugan,                :
Debbie Dugan, John Kratz,               :
Jay McKeever and Ellis Kratz            :

The Cutler Group, Inc.,                 :
                                        :
                                        :
                v.                      : No. 1239 C.D. 2016
                                        : Argued: February 6, 2017
                                        :
Board of Supervisors of                 :
Worcester Township,                     :
                                        :
                Appellant               :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED: July 3, 2017

In these consolidated appeals, Dana Comly, et al. (collectively, Objectors)[1] and the Board of Supervisors (Board) of Worcester Township (Township) appeal the order of the Montgomery County Court of Common Pleas (trial court) reversing the Board's decision denying the conditional use application of The Cutler Group, Inc. (Landowner) to construct a residential life care facility for individuals over 55 years of age. We affirm.

Landowner is the equitable owner of a 157-acre parcel of property formerly known as the Center Square Golf Club in the Township's AGR Agricultural Zoning District. In August 2014, Landowner filed a conditional use[2] application with the Board to construct a "residential life care facility" on the property.[3] Section 150-11(D)(7) of the Township's Zoning Ordinance permits

---

[1] The Township residents appearing as parties opposing the development are: Dana Comly; Craig Furlong; Sheryl Jorna; Adrienne Keenan; Karl Kocher; Barb Kocher; Ruth Kratz; Stuart Land; Bobi Land; Pete Loughran; Ed Lynett; Bob Marshall; Donna Marshall; Jim Phelan; Debbie Phelan; Danielle Shadduck; Jim Wiley; Paula Wiley; Paul Dugan; Debbie Dugan; John Kratz; Ellis Kratz; and Jay McKeever.

[2] The special exception and the conditional use are basically the same land use regulatory device; the difference is whether the decision is made by the municipality's zoning hearing board, as in the case of a special exception, or the board of supervisors, as in the case of a conditional use. *See Bailey v. Upper Southampton Township*, 690 A.2d 1324, 1326 (Pa. Cmwlth. 1997) (stating that "a conditional use is nothing more than a special exception which falls within the jurisdiction of the municipal legislative body, rather than the zoning hearing board").

[3] Section 150-215 of the Zoning Ordinance sets forth the standards and criteria required for the grant of a conditional use, in relevant part:

> A. The applicant shall establish by credible evidence that the use . . . complies with the declaration of legislative intent as stated in Article I of this chapter and the declaration of legislative intent that may appear at the beginning of the applicable district under which approval is sought.

**(Footnote continued on next page…)**

**(continued…)**

B. The applicant shall establish by credible evidence compliance with conditions on the conditional use enumerated in that section which gives the applicant the right to seek a conditional use.

C. The applicant shall establish by credible evidence that the proposed use . . . shall not adversely affect neighboring land uses in any way and that the proposed use . . . shall not impose upon its neighbors in any way, but rather shall blend in with them in a harmonious manner.

D. The applicant shall establish by credible evidence that the proposed use . . . shall be properly serviced by all existing public service systems. The peak traffic generated by the subject of the approval must be accommodated for in a safe and efficient manner or improvements made in order to effect the same. Similar responsibility must be assumed with respect to other public service systems including police protection, fire protection, utilities, parks and recreation.

E. The applicant shall establish by credible evidence that the proposed use . . . shall be properly designed with regard to internal circulation, parking, buffering and all other elements of proper design.

F. The applicant shall provide the Supervisors with sufficient plans, studies or other data to demonstrate that compliance with the permitted uses or other such regulations, as may be the subject of consideration for a conditional use approval, is unreasonable or inappropriate for the instance at hand.

G. The Supervisors shall impose such conditions as are necessary to ensure compliance with the purpose and intent of this chapter, which may include planting and buffers, harmonious design of buildings and the elimination of noxious, offensive or hazardous elements.

Reproduced Record (R.R.) at 357a-358a.

3

such a use in the zoning district.[4]  Section 150-9 defines such a use as "[a] residential development restricted to the elderly that provides a continuum of accommodations and care, from independent living units to personal care and nursing homes.  'Independent living units' are dwelling units located within a residential life care facility."  R.R. at 254a.

The proposed development will have 164 detached independent living villa units; 170 attached independent living carriage houses; a senior care complex comprised of 141 units (61 independent living units and 80 with assisted living and memory care); a clubhouse; and recreational, dining, and other amenities.  All of the residences are limited to individuals over 55 years of age and will be purchased in fee from Landowner.  Heritage Senior Living (Heritage) will own and operate the senior care complex which will be staffed with nurses and will provide physical rehabilitation and hospice care.

At Board hearings, in support of the application, Landowner presented the expert testimony from Robert Heuser, a professional land planner, and Philip

---

[4] Section 150-11(D)(7) states, in relevant part:

> Any one of the following uses shall be permitted when authorized as a conditional use by the [Board], subject to the provisions of §150-215, all applicable requirements of the AGR District and the specific standards listed below:
>
> * * *
>
> (7) A residential life-care facility, provided that the use is located on a lot 75 acres or larger, building coverage does not exceed 15% of the net lot area and impervious coverage does not exceed 40% of the net lot area.

R.R. at 258a, 259a.

4

Wursta, P.E., a professional traffic engineer; and lay testimony from Michael McCormick, Heritage's director of development. Landowner also introduced a Memorandum of Understanding (Memorandum) with Heritage that was executed during the hearings and which grants the occupants of the independent living units "access to the senior care facility on a priority basis . . . ." R.R. at 226a. The Memorandum also states that Heritage will arrange for the occupants of the independent living units to receive the same level of medical care and nursing care as those in the senior care facility when requested to do so. *Id.*

In opposition to the application, the Board's appointee presented the expert testimony of Casey Moore, P.E., a traffic engineer. Objectors presented the testimony of Cathleen Stewart, an expert in life care facilities, and George Bryant, an expert in architecture as it relates to life care facilities. A number of neighbors also testified regarding their concerns on the traffic impacts of the development and the loss of open space.

The Board ultimately determined that the proposed development did not meet the definition of a Residential Life-Care Facility under Section 150-9 of the Zoning Ordinance because: (1) it is not a residential development restricted to the elderly; (2) it does not provide a continuum of accommodations; (3) it does not provide a continuum of care; (4) it does not provide a level of care and accommodation which would constitute a "nursing home;" and (5) the development does not propose "independent dwelling units" within a residential life care facility.

First, the Board found that the development will be restricted by a recorded covenant requiring all residents to be at least 55 years old. R.R. at 488a. However, the Board found that Landowner did not offer any evidence that the age

5

of 55 constitutes "elderly." Rather, the Board found credible Stewart's testimony that in the fields of health administration and life care facilities, "elderly" connotes an individual who is 65 and eligible for Medicare and that residential life-care facilities typically require a minimum age of 62 to 65 years old. *Id.* at 826a.

The Board also found that McCormick testified that the residents will not be guaranteed the ability to advance from one level of living accommodations to the next as required by age, health, or frailty. R.R. at 645a. The Board found that while the Memorandum purportedly addressed this issue, it fails to ensure that the owner of a villa or carriage home (independent living accommodations) have the contractual right to transition to a unit in the senior care complex (where the assisted living and memory care accommodations are located). While the Memorandum purportedly addresses a continuum of care, it is silent on a continuum of accommodation. The Board found credible Stewart's testimony that a continuum of accommodation guarantees the ability to move from one level of care (i.e., an independent living unit) to another level of care (i.e., a personal care unit) within the same facility. *Id.* at 837a-838a. The Board found that without a guarantee that the residents have the ability to progress through all of the accommodations, the development is simply a residential development located next to a senior care complex with no continuum of accommodations connecting the two. The Board found that based on Landowner's refusal to make such a guarantee, it could not reasonably impose such as a condition for the development.

The Board also accepted McCormick's testimony that the residents are not guaranteed the ability to advance from one level of care to the next as age, health, or frailty require. R.R. at 658a-659a. The Board found that the Memorandum does not ensure that the owners of a villa or carriage home would

6

have the contractual right to move into a unit in the senior care complex for assisted living or memory care if needed. Rather, Paragraph 2 merely indicates that a villa or carriage house owner might have access "on a priority basis" to the advanced level of care in the senior care complex, *id.* at 226a, but that such is not a guarantee. The Board found credible Stewart's testimony that a continuum of care guarantees the ability to move from one level of care to another within the same facility. *Id.* at 831a, 832a-833a. The Board found that without such a guarantee, based on common sense and human experience, a continuum of care does not exist and the proposal is simply a residential development next to a senior care facility with no continuum of care connecting the two independent developments. Again, based on Landowner's refusal to make such a guarantee, the Board found that it could not reasonably impose such as a condition for the development.

The Board further found that the proposal does not provide a level of care and accommodation constituting a "nursing home." Landowner's evidence confirmed that the development would not be licensed by the Department of Health to operate as a skilled nursing facility. R.R. at 659a. The Board found persuasive Stewart's testimony that within the fields of health administration and health care facilities, the skilled nursing level of care and accommodation is referred to as a "nursing home." *Id.* at 832a. Because it will not be licensed as a skilled nursing facility, the Board found that the development will not include a level of care and accommodation constituting a "nursing home" as required by Section 150-9.

The Board also determined that Landowner does not propose "independent living units" located within a residential life care facility. The Board found persuasive Bryant's testimony that the development is designed as a

7

residential development and a separate senior care facility. R.R. at 873a. The Board determined that under Section 150-9, independent living units such as the villas and carriage homes are only permitted as units within a residential life care facility and that as such, the proposed units are nothing more than a residential development located next to a senior care facility with no contractually guaranteed access for increased care or accommodations.

Finally, the Board noted that Objectors "made no attempt to put forth any evidence or testimony establishing that the Development will have a detrimental impact on the health, safety and welfare of the general public." R.R. at 91a. Nevertheless, the Board determined that "this is of no consequence" because Landowner "failed to satisfy its initial burden of establishing that the Development complies with the objective standards and criteria of the Zoning Ordinance," so that it was not entitled to a presumption that the development would not be detrimental to the health, safety, and welfare and the burden never shifted to Objectors to rebut the presumption. *Id.* at 91a-92a. Based on the foregoing, the Board denied Landowner's application.

Landowner appealed to the trial court and Objectors intervened. Without receiving additional evidence, the trial court granted the appeal and reversed the Board's decision denying Landowner's conditional use application.[5] The trial court found that the terms "elderly," "nursing home," and "continuum of

---

[5] After considering the Board's record and hearing argument, the trial court initially remanded the matter to the Board to make additional findings of fact and conclusions of law regarding the effect of the Memorandum; whether reasonable conditions regarding the continuum of accommodation and care could be imposed; and whether Objectors demonstrated that the development would be detrimental to the health, safety, and welfare of the general public. The Board's decision and the trial court opinion summarized above are post-remand.

accommodation and care" contained in the Zoning Ordinance's definition of a Residential Life Care Facility are not defined and are ambiguous, so they must be interpreted in conformity with their common and approved usages and in favor of Landowner. The trial court looked to dictionary definitions and concluded that the proposed development met the requirements of the Zoning Ordinance. The trial court also concluded that the Board erred in determining that the Zoning Ordinance required a guaranteed continuity of accommodations and care and that such could be imposed as a condition for final development. The Board and Objectors then filed these consolidated appeals of the trial court's order.[6]

On appeal,[7] the Board and Objectors argue that the trial court erred or abused its discretion in granting Landowner's appeal and reversing the Board's

---

[6] We granted Objectors' unopposed motion to consolidate the appeals, and Objectors joined in the appellate brief filed by the Board in support of its appeal. We note with profound displeasure the Board's and Objectors' failure to append the trial court's Pa. R.A.P. 1925(a) Opinion to their appellate briefs because Pa. R.A.P. 2111(b) requires that "[t]here shall be appended to the brief a copy of any opinions delivered by any order . . . below relating to the order . . . under review . . . ." Nevertheless, we will not quash these consolidated appeals because the trial court's opinion has been made part of the certified record and the reproduced record, and this omission does not preclude our effective appellate review. *See, e.g., Holland v. Department of Transportation, Bureau of Driver Licensing*, 656 A.2d 178, 179 (Pa. Cmwlth. 1995) ("Initially, we note that [Appellant], in disregard of Pa. R.A.P. 2111(b), failed to append to his brief the opinion of the common pleas court in this matter. While this non-conformity to the rules is inexcusable, it is not so detrimental in this particular case as to preclude meaningful appellate review and compel quashing [Appellant]'s appeal.") (footnote omitted).

[7] In a land use appeal where the trial court does not take additional evidence, our review is limited to determining whether the Board abused its discretion or committed an error of law. *In re Thompson*, 896 A.2d 659, 666 n. 4 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 636 (Pa. 2007). The construction of the terms of the Zoning Ordinance is a question of law. *See, e.g., Pittsburgh Cellular Telephone Company v. Board of Supervisors of Marshall Township*, 704 A.2d 192, 194 (Pa. Cmwlth. 1997) ("Whether a proposed use falls within a given category specified in an ordinance is a question of law. Although the Ordinance at issue in this case does not define 'utilities,' we have consulted other sources for guidance as to what constitutes a utility . . . .") (citations omitted); *Wadlow v. Zoning Board of Borough of Bellevue*, 436 A.2d 1245 (Pa.

**(Footnote continued on next page…)**

9

decision because the Board properly found that Landowner failed to prove that it met the following requirements for the conditional use of a residential life care facility under the Zoning Ordinance: (1) that it is "restricted to the elderly;" (2) that it provides a "continuum of accommodations;" (3) that it provides a "continuum of care;" (4) that it includes a "nursing home;" and (5) that it contains "independent dwelling units" within the residential life care facility.

However, we conclude that these arguments were thoroughly and correctly analyzed and the matter ably disposed of in the comprehensive and well-reasoned opinion of the Honorable Gary Silow of the Montgomery County Court of Common Pleas. Accordingly, we affirm the trial court's order on the basis of its

---

**(continued…)**

Cmwlth. 1981) ("The contested issue is one of law involving a construction of the word 'sign' which is undefined in the zoning ordinance."). Moreover:

> [The Board] "has an obligation to construe the words of an ordinance as broadly as possible to give the landowner the benefit of the least restrictive use when interpreting its own Zoning Code." Any doubt must be resolved in favor of the landowner. It is an abuse of discretion for [the Board] to construe the terms of an ordinance for the intended purpose of restricting a property's use. In construing local zoning ordinances, this Court "relies upon the common usage of the words and phrases contained therein and will construe that language in a sensible manner."

*Shvekh v. Zoning Hearing Board of Stroud Township*, 154 A.3d 408, 412 (Pa. Cmwlth. 2017) (citation omitted). *See also* Section 603.1 of the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, added by Act of December 21, 1988, P.L. 1329, 53 P.S. §10603.1 ("In interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction.").

10

opinion in *The Cutler Group, Inc. v. Board of Supervisors of Worcester Township and Dana Comly et al.*, (No. 15-13769, filed September 1, 2016).

MICHAEL H. WOJCIK, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Cutler Group, Inc.     :
              : No. 1223 C.D. 2016
      v.     :
              :
Board of Supervisors     :
of Worcester Township    :

Appeal of: Dana Comly, Craig  :
Furlong, Sheryl Jorna, Adrienne  :
Keenan, Karl Kocher, Barb Kocher, :
Ruth Kratz, Stuart Land,    :
Bobi Land, Pete Loughran,   :
Ed Lynett, Maura Lynett,    :
Bob Marshall, Donna Marshall,  :
Jim Phelan, Debbie Phelan,   :
Danielle Shadduck, Jim Wiley,  :
Paula Wiley, Paul Dugan,    :
Debbie Dugan, John Kratz,   :
Jay McKeever and Ellis Kratz  :


The Cutler Group, Inc.,    :
              : No. 1239 C.D. 2016
      v.     :
              :
Board of Supervisors of    :
Worcester Township, Dana Comly, :
Craig Furlong, Sheryl Jorna,   :
Adrienne Keenan, Karl Kocher, Barb :
Kocher, Ruth Kratz, Stuart Land,  :
Bobi Land, Pete Loughran, Ed Lynett, :
Bob Marshall, Donna Marshall, Jim :
Phelan, Debbie Phelan, Danielle  :
Shadduck, Jim Wiley, Paula Wiley, :
Paul Dugan, Debbie Dugan, John  :
Kratz, Ellis Kratz, and Jay McKeever :
              :
Appeal of:  Board of Supervisors of :
Worcester Township     :

# **O R D E R**

AND NOW, this 3rd day of <u>July</u>, 2017, the order of the Montgomery County Court of Common Pleas dated June 10, 2016, at No. 2015-13769 is AFFIRMED.

_____

MICHAEL H. WOJCIK, Judge